**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

RODRIGO LUCAS CAMPOS GRACHET,

Petitioner,

v.

WARDEN ADELANTO ICE PROCESSING CENTER ET AL,

Respondents.

Case No. 5:26-cv-05100-MAR

**ORDER GRANTING HABEAS PETITION AND ORDERING IMMEDIATE RELEASE**

## I.

## INTRODUCTION

On November 3, 2026, Petitioner Rodrigo Lucas Campos Grachet (A#221-493-745) ("Petitioner"), an immigration detainee proceeding through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody. Dkt. 1, ("Pet."). On November 10, 2026, Respondent filed an Answer to the Petition. Dkt. 7, ("Answer"). The parties have consented to proceed before the undersigned Magistrate Judge. Dkt. 9. **For the reasons set forth below, the Court orders that the Petition is GRANTED and Respondents are ORDERED to immediately release Petitioner from custody.**

## II.

## FACTUAL BACKGROUND[1]

Petitioner is a Brazilian national who entered the United States in March 2020 in Miami with a B-2 nonimmigrant visa. Pet. at 2. Due to the COVID-19 pandemic, Petitioner was unable to depart as he had originally planned because international flights were cancelled in accordance with lockdown procedures. Id. During his subsequent time in the United States, Petitioner met and married a United States Citizen. They are the parents of two United States citizen children. Id. On June 18, 2026, Petitioner's wife filed a Form I-130, Petition for Alien Relative, with U.S. Citizenship and Immigration Services ("USCIS"), on behalf of Petitioner, which is currently pending adjudication. For the past five years, Petitioner has created work and community ties in the United States.

Petitioner was arrested by local law enforcement on or about February 24, 2026 in connection with an open traffic court case.[2] Pet. at 3. Following his release from custody, Petitioner was arrested by Immigration and Customs Enforcement. There are no criminal charges pending against Petitioner in Utah, and he has no criminal history of note other than a single citation for fishing without a license, and two other traffic violations. Id. Prior to arresting him, Respondents did not provide Petitioner with any notice, a pre-deprivation hearing, or an opportunity to be heard regarding his detention.

Petitioner is in custody at the Adelanto ICE Detention Center. Id. at 3.

///

---

1 The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition. Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so unless noted herein. Dkt. 7. Therefore, the Court considers the following undisputed facts to be conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

2 Respondents allege that this arrest was related to a domestic violence offense. However, Respondents only evidence supporting this claim is the I-213 form. On the other hand, Petitioner presents court documents related to the February arrest which explicitly establish the arrest was related to a vehicle infraction. See Dkt. 1-1 at 22.

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner claims his detention violates the Immigration and Nationality Act ("INA") and his due process rights under the Fifth Amendment. Pet. at 9–10. Petitioner seeks immediate release from custody, or in the alternative a constitutionally adequate bond hearing. Id. at 10. Respondents argue that Petitioner is not entitled to release and that Petitioner has not exhausted administrative remedies. Answer at 2–5.

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates

procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken,

4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

### A. EXHAUSTION

As an initial matter, Respondents contend that Petitioner must exhaust administrative remedies. In the context of a habeas petition, however, the administrative exhaustion requirement is prudential, not mandatory or jurisdictional. See Y.S.G. v. Andrews, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025) ("The federal habeas statute under which this case was filed does not require exhaustion of administrative remedies.") (emphasis added). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation omitted). A petitioner is not required to exhaust administrative remedies, however, where such remedies would be inadequate, where exhaustion would be futile, or where irreparable harm would result. Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004); see also Vasquez-Rodriguez v. Garland, 7 F.4th 888, 896 (9th Cir. 2021) ("In the immigration context, . . . [w]e will excuse a failure to exhaust if it is very likely what the Board's result would have been. Thus, where the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required." (internal quotation marks and citations omitted); Marroquin Ambriz v. Barr, 420 F. Supp. 3d 953, 961–962 (N.D. Cal. 2019) (waiving exhaustion requirement and noting the BIA lacks jurisdiction to decide constitutional questions regarding immigration laws); Wang v. Reno, 81 F.3d 808, 814 n.8 (9th Cir. 1996) (per curiam) ("[T]he design of the [Immigration and Nationality Act] does not suggest that Congress has considered and provided mechanisms to remedy

the constitutional violations alleged . . . . Congress could not have intended for the INA to redress constitutional violations when neither the IJ nor the BIA has jurisdiction to hear such claims.").

Here, there are several reasons to waive the exhaustion requirement. First, the Puga factors do not favor exhaustion because, on an appeal to the BIA, "it is not clear to the Court what information the BIA would have at its disposal beyond what has been provided on this Application." Diana Carolina Rivera Mendoza v. Kristi Noem, et al., No. CV 25-3227-MWF(AGR), 2026 WL 923311, at *5 (C.D. Cal. Apr. 1, 2026). The record establishes the circumstances of Petitioner's arrest and detention. The BIA would not, therefore, be in any "better position to review" the question at issue. Id. More fundamentally, Petitioner raises a constitutional claim regarding his arrest and detention, and "[c]learly the BIA has no jurisdiction to decide questions of the constitutionality of the immigration laws." Liu v. Waters, 55 F.3d 421, 426 (9th Cir. 1995); Wang, 81 F.3d at 814 n.8; Marroquin Ambriz, 420 F. Supp. 3d at 961. "As the BIA has explained, it 'must apply the statute as written to the cases that come before us. It is well settled that we lack jurisdiction to rule on the constitutionality of the Act and the regulations we administer . . . . [E]ven if we were to perceive a constitutional infirmity in the unambiguous statute before us, we would be without authority to remedy it." Id. (citing In Re Fuentes-Campos, 21 I. & N. Dec. 905, 912 (BIA 1997)).

Even where the Puga factors do weigh in favor of requiring exhaustion, waiver of the requirement may still be warranted if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing, 370 F.3d at 1000. The alleged "violation of Petitioner's due process rights is sufficient to satisfy the irreparable harm requirement." Doe v. Becerra, 787 F. Supp. 3d 1083, 1095 (E.D. Cal. 2025). And, even where, as here, a petitioner has appealed a bond determination to the BIA, "requiring Petitioner to be subjected to unlawful detention pending the BIA's

decision would [also] cause irreparable harm." Rodriguez Cabrera v. Mattos, 808 F. Supp. 3d 1159, 1176 (D. Nev. 2025); Y.S.G., 2025 WL 2979309, at *7 ("[P]etitioner has adequately demonstrated that irreparable injury will result if he has to await the outcome of his BIA appeal."). In other words, even if the BIA were to ultimately reverse the IJ's decision denying bond, that would not afford Petitioner an adequate remedy for his prolonged detention in the interim. "[B]ecause of delays inherent in the administrative process, BIA review would result in the very harm that the bond hearing was designed to prevent: prolonged detention without due process during lengthy and backlogged removal proceedings." Hechavarria v. Whitaker, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019) (citation modified); see also Diana Carolina Rivera Mendoza, 2026 WL 923311, at *5 (concluding that because "the Ninth Circuit's decisions . . . preclude as a matter of law any ruling that the IJ correctly applied the clear and convincing evidentiary standard[, t]o require Petitioner to appeal to the BIA would be a futile gesture, and would instead needlessly prolong Petitioner's detention."). Here, to require Petitioner to pursue futile or inefficacious administrative remedies would cause him irreparable injury. The administrative exhaustion requirement is, therefore, appropriately waived here, and does not bar the instant Petition.

**B. DUE PROCESS**

It is undisputed that Petitioner has resided in the United States since 2022, has two U.S. citizen children, and is married to a United States citizen. It is also undisputed that Petitioner has strong family and community ties. Finally, although Respondents contend that Petitioner has been arrested for domestic violence allegations, Petitioner's evidence establishes that Petitioner's criminal history is related to a traffic violation. See Dkt. 1-1 at 22–24; Reply at 5; Dkt. 8-1 at 1; see also Duque Mancera v. Warden of the Desert View Facility, No. EDCV 26-2937-AS, 2026 WL 1764919, at *4 (C.D. Cal. June 11, 2026) ("Petitioner's 2025 conviction and re-detention immediately upon release from jail does not diminish [his] liberty interest.") (citing Kandola v. Warden, Cal. City Det. Facility, 2026 WL 1243464, at *2 (E.D. Cal. May 6, 2026)). Based on

these facts, the Court concludes that Petitioner developed a substantial liberty interest in remaining out of custody based on the length of time he lived in the United States and the ties she built to the community over the past six years. See, e.g., Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) (same); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."). Indeed, Petitioner has lived freely in the United States with Respondents knowledge for six years prior to his detention. See JIANXIAN YU, Petitioner, v. THOMAS GILES, et al., Respondents, No. 5:26-CV-04692-MBK, 2026 WL 2455945, at *5 (C.D. Cal. Aug. 21, 2026) ("Petitioner became subject to detention under 8 U.S.C. § 1226(a) after his visa expired, but the Government elected not to detain him…"). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Therefore, the Court concludes that Petitioner's arrest without a pre-deprivation hearing violated Petitioner's procedural due process rights.[3] See, e.g., J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing before he is deprived of any

---

3 As set forth above, Petitioner has a substantial liberty interest in remaining free from detention which must be considered under the first Matthews factor. Under the second Matthews factor, the risk of erroneous deprivation is high where Petitioner is deprived of any custody redetermination hearing or is provided a hearing only after he has been detained. Duque Mancera v. Warden of the Desert View Facility, No. EDCV 26-2937-AS, 2026 WL 1764919 (C.D. Cal. June 11, 2026). Finally, under the third Matthews factor, the Government's interest in detaining Petitioner without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided. See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

significant protected interest." (internal quotation marks and brackets omitted)); Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

Given the violation of Petitioner's due process rights, the Court concludes that "Petitioner's release is necessary to return [her] to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

The fact that Petitioner could receive a post-deprivation bond hearing does not remedy the violation of Petitioner's procedural due process rights. See, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Indeed, "an increasing wave of

district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner's due process rights and, thus, invalid." Orellana, Rivera v. J. Johnson, 2026 WL 1390433, at *1 & n.2 (C.D. Cal. May 14, 2026) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales v. U.S. Immigr. and Customs Enf't, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)). Thus, the Court concludes that only return to the status quo can remedy the violation of Petitioner's due process rights in this case.

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo, 2025 WL 2381464, at *8 ("On balance, the Mathews factors show that petitioner is entitled

to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing here. Petitioner has suffered an irreparable injury by being detained in violation of his due process rights and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and file a habeas petition to secure his release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing.[4]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's

---

4 Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

procedural due process rights).

## VI.

## ORDER

Based on the foregoing, the Court ORDERS that the Petition is **GRANTED** as follows. Respondents shall immediately release Petitioner Rodrigo Lucas Campos Grachet (A#221-493-745) ("Petitioner") from custody (subject only to conditions that were in place prior to his detention, if any) and return any confiscated property and documents to Petitioner upon release. Respondents shall not re-detain Petitioner pursuant to 8 U.S.C. § 1226 without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. **Respondents shall file a notice of compliance within twenty-four hours.**

DATED: November 25, 2026

HON. MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE